UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

BRETT F.,[1]

Plaintiff

DECISION and ORDER

-vs-

1:24-CV-00055 CJS

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

---

## INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("Commissioner" or "Defendant") which denied the application of Plaintiff for Social Security Disability Insurance ("DIB") benefits. Now before the Court is Plaintiff's motion for judgment on the pleadings (ECF No. 8) and Defendant's cross-motion for the same relief (ECF No. 13). For reasons discussed below, Plaintiff's application is denied and Defendant's application is granted.

## STANDARDS OF LAW

The Commissioner decides applications for disability benefits using a five-step sequential evaluation process:

> A five-step sequential analysis is used to evaluate disability claims. *See* 20 C.F.R. §§ 404.1520, 416.920. First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the

[1] The Court's Standing Order issued on November 18, 2020, indicates in pertinent part that, "[e]ffective immediately, in opinions filed pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), in the United States District Court for the Western District of New York, any non-government party will be identified and referenced solely by first name and last initial."

> Commissioner next considers whether the claimant has a severe impairment[2] which significantly limits his physical or mental ability to do basic work activities.[3] If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in the regulations [or medically equals a listed impairment]. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity [("RFC")] to perform his past work.[4] Finally, if the claimant is unable to perform his past work, the Commissioner then determines whether there is other work which the claimant could perform. The claimant bears the burden of proof as to the first four steps, while the Commissioner bears the burden at step five.[5]

*Colvin v. Berryhill*, 734 F. App'x 756, 758 (2d Cir. 2018) (citations and internal quotation

---

[2] "At step two, the ALJ must determine whether the claimant has a 'severe medically determinable physical or mental impairment that meets the duration requirement in [20 C.F.R.] § 404.1509, or a combination of impairments that is severe and meets the duration requirement.' *Id*. If not, the claimant is deemed not disabled, and the inquiry ends." *Koch v. Colvin*, 570 F. App'x 99, 101 (2d Cir. 2014); *see also*, 20 C.F.R. § 404.1520(a)(4)(ii) ("At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.").

[3] The Commissioner's Regulations define basic work-related activities as follows: "Basic work activities. When we talk about basic work activities, we mean the abilities and aptitudes necessary to do most jobs. Examples of these include— (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) Capacities for seeing, hearing, and speaking; (3) Understanding, carrying out, and remembering simple instructions; (4) Use of judgment; (5) Responding appropriately to supervision, co-workers and usual work situations; and (6) Dealing with changes in a routine work setting." 20 C.F.R. § 404.1522 (West 2023).

[4] Residual functional capacity "is what the claimant can still do despite the limitations imposed by his impairment." *Bushey v. Berryhill*, 739 F. App'x 668, 670–71 (2d Cir. 2018) (citations omitted); *see also*, 1996 WL 374184, Titles II & Xvi: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P (S.S.A. July 2, 1996).

[5] "The Commissioner's burden at step five is to show the existence of possible employment for an individual with the RFC determined by the ALJ in the fourth step of the sequential analysis." *Smith v. Berryhill*, 740 F. App'x 721, 726–27 (2d Cir. 2018) (citation omitted). The ALJ typically does this either by resorting to the medical vocational "grids" or, where the claimant has a non-exertional impairment, by taking testimony from a vocational expert. *See, Bapp v. Bowen*, 802 F.2d 601, 603 (2d Cir. 1986) ("[T]he mere existence of a nonexertional impairment does not automatically require the production of a vocational expert nor preclude reliance on the guidelines. A more appropriate approach is that when a claimant's nonexertional impairments significantly diminish his ability to work—over and above any incapacity caused solely from exertional limitations—so that he is unable to perform the full range of employment indicated by the medical vocational guidelines, then the Secretary must introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform.").

marks omitted).

An unsuccessful claimant may bring an action in federal district court to challenge the Commissioner's denial of the disability claim. In such an action, "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C.A. § 405(g) (West). Further, Section 405(g) states, in relevant part, that "[t]he findings of the Commissioner of Social security as to any fact, if supported by substantial evidence, shall be conclusive."

The issue to be determined by the court in such an action is whether the Commissioner's conclusions "are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998); *see also, Barnaby v. Berryhill*, 773 F. App'x 642, 643 (2d Cir. 2019) ("[We] will uphold the decision if it is supported by substantial evidence and the correct legal standards were applied.") (citing *Zabala v. Astrue*, 595 F.3d 402, 408 (2d Cir. 2010) and *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012).").

"First, the [c]ourt reviews the Commissioner's decision to determine whether the Commissioner applied the correct legal standard." *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999); *see also, Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) ("[W]here an error of law has been made that might have affected the disposition of the case, this court cannot fulfill its statutory and constitutional duty to review the decision of the administrative agency by simply deferring to the factual findings of the [administrative law judge] [("]ALJ[)"]. Failure to apply the correct legal standards is grounds for reversal.") (citation omitted).

If the Commissioner applied the correct legal standards, the court next "examines the record to determine if the Commissioner's conclusions are supported by substantial evidence." *Tejada v. Apfel*, 167 F.3d at 773. Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (citation omitted).

> The substantial evidence standard is a very deferential standard of review—even more so than the 'clearly erroneous' standard, and the Commissioner's findings of fact must be upheld unless a reasonable factfinder would have to conclude otherwise." *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (emphasis in original). "An ALJ is not required to discuss every piece of evidence submitted, and the failure to cite specific evidence does not indicate that such evidence was not considered." *Id*.

*Banyai v. Berryhill*, 767 F. App'x 176, 177 (2d Cir. 2019), as amended (Apr. 30, 2019) (internal quotation marks omitted); *see also, Snyder v. Comm'r of Soc. Sec*., No. 22-277-CV, 2023 WL 1943108, at *1 (2d Cir. Feb. 13, 2023) ("While the substantial evidence standard requires we find more than a mere scintilla of support for the Commissioner's decision, it is still a very deferential standard of review requiring us to uphold the Commissioner's findings unless a reasonable factfinder would *have to conclude otherwise*.") (emphasis in original; citations and internal quotation marks omitted); *Schillo v. Kijakazi*, 31 F.4th 64, 69 (2d Cir. 2022) ("We may vacate the agency's disability determination only if it is based on legal error or unsupported by 'substantial evidence'—that is, if no reasonable factfinder could have reached the same conclusion as the ALJ.").

In applying this standard, a court is not permitted to re-weigh the evidence. *See, Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016) ("Krull's disagreement is with the ALJ's weighing

of the evidence, but the deferential standard of review prevents us from reweighing it."); *see also, Riordan v. Barnhart*, No. 06 CIV 4773 AKH, 2007 WL 1406649, at *4 (S.D.N.Y. May 8, 2007) ("The court does not engage in a *de novo* determination of whether or not the claimant is disabled, but instead determines whether correct legal standards were applied and whether substantial evidence supports the decision of the Commissioner.") (citations omitted). "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (internal quotation marks omitted). "In other words, this Court must afford the Commissioner's determination considerable deference, and 'may not substitute its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review.'" *Melia v. Colvin*, No. 1:14-CV-00226 MAD, 2015 WL 4041742, at *2 (N.D.N.Y. July 1, 2015) (quoting *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir.1984)).

FACTUAL and PROCEDURAL BACKGROUND

The reader is presumed to be familiar with the factual and procedural history of this action. Briefly,

> Plaintiff applied for DIB on March 10, 2020, alleging he became disabled on May 5, 2018. Tr. 63. After his preliminary appeals were denied, he requested a hearing before an ALJ. Tr. 131-39, 145-49. … [The ALJ conducted a hearing and] issued a decision on January 11, 2023, finding Plaintiff was disabled beginning September 3, 2021, but was not disabled before that date. Tr. 14-30, 47-62.
>
> ***
>
> [In his decision,] [a]t step one of the sequential evaluation, the ALJ found

Plaintiff had not engaged in substantial gainful activity. Tr. 20. At the second step, the ALJ determined Plaintiff had the following severe impairments: bilateral hip degenerative joint disease, status post November 2019 left total hip replacement, status post January 2020 right total hip replacement; degenerative disc disease of the lumbar spine; morbid obesity; and status post August 2019 gastric sleeve surgery. Tr. 20. The ALJ found that Plaintiff's bilateral carpal tunnel syndrome was not a severe impairment. Tr. 20. After finding at the third step that Plaintiff's impairments did not meet or equal the criteria of any Listings, the ALJ found Plaintiff could perform less than the full range of sedentary work as defined in 20 C.F.R. § 404.1567(a). Tr. 22. Specifically, he found Plaintiff could lift and/or carry 10 pounds occasionally and less than ten pounds frequently, stand and/or walk two hours, sit six hours, and occasionally stoop, kneel, crouch, crawl, and climb ladders, ropes, or scaffolds. Tr. 22.

[In making this RFC finding, the ALJ discussed the medical evidence and how, for example, it indicated that Plaintiff had no significant limitation sitting. *See*, Tr. 25 ("[T]here does not appear to be any indication from the medical evidence that the claimant has any significant limitation with respect to his ability to perform work primarily from a seated position consistent with sedentary work[.] The claimant advised his treating providers that he was limited with his ability to stand and walk, but that he had no limitations with respect to sitting."). The ALJ referred to several medical opinions in the record that supported the RFC finding. Tr. 26-27.

As for the opinions of Lindsey Clark, M.D. ("Clark"), Plaintiff's orthopaedic back specialist, the ALJ found them persuasive insofar as they were consistent with an RFC for sedentary work, but unpersuasive insofar as Clark had opined that Plaintiff's symptoms would frequently interfere with his attention and concentration while performing even simple work, and that Plaintiff would need a 30-minute break to lie down every hour during the workday. In particular, the ALJ stated:

> With regard to the treating physician opinions of Lindsey Clark, M.D., Dr. Clark opined in a February 2021 medical source statement that the claimant has symptoms that frequently interfere with the attention and concentration needed to perform even simple work-related tasks, and that the claimant needs to have an opportunity to rest for 30 minutes

every hour during an eight-hour workday (Exhibit 27F). I initially found Dr. Clark's opinions to be persuasive as they seemed to be well-supported by Dr. Clark's physical exam findings and the diagnostic imaging referenced in treatment notes, including antalgic gait and extensive lumbar spine degenerative changes (Exhibit 5A). However, the Appeals Council pointed out that Dr. Clark's opinions are not consistent with Dr. Clark's examination findings (Exhibit 6A). As the Appeals Council noted, "there do not appear to be any examination findings relating to the claimant's attention and concentration in Dr. Clark's notes, or elsewhere in the medical evidence of record … In the claimant's function report dated July 22, 2020, the claimant reported no limitation with respect to his concentration, and that he could pay attention "indefinitely" (Exhibit 5E, page 6)" (Exhibit 6A, page 3). The Appeals Council added that, "Dr. Clark opined that, since December 2016, the claimant's conditions have limited the claimant to rarely/never balancing, stooping, kneeling, crouching or crawling; standing less than 15 minutes at one time; walking less than 15 minutes at one time; sitting only 30 minutes at one time; and only occasionally reaching in any direction, handling, fingering, or feeling (Exhibit 27F, page 3-6)... [T]he evidence indicates, however, that the claimant performed heavy exertion work through May 2018 (Exhibit 6E)…as noted above, the claimant reported no limitation with respect to sitting (Exhibit 16F, page 9; 15F, page 5)…further, the claimant reported performing activities during the period at issue which are not consistent with the limitations set forth in the opinion, including carrying plywood, building pallets, cutting the lawn, throwing axes, biking, golfing, and working 20-25 hours per week." Based on this analysis, I find that Dr. Clark's February 2021 medical source statement is not persuasive. However, I note that Dr. Clark was recontacted after the remand for clarification of [her] opinions (Exhibits 20E, 21E, and 43F). In May 2022, Dr. Clark wrote that the February 2021 medical source statement "is accurate information and [I] agree with the restrictions stated … the work restrictions are based on the claimant's symptoms, complaints, and his and my assessment of what we believe he will be able to tolerate" (Exhibit 43F).[6] Even though the

[6] Clark's explanation in Exhibit 43 as essentially states that while her exam findings were largely normal, she nevertheless stood by the limitations in her February 2021 assessment since they were consistent with Plaintiff's subjective complaints and with what he thought he could tolerate.

> limits in Dr. Clark's February 2021 medical source statement are overstated when considered in balance with the cited clinical findings, given Dr. Clark's subsequent vigorous defense of [her] assessments, alongside the sedentary RFC opinions of the DDS medical consultant Dr. Koenig, the radiology reports, and the history of multiple surgeries, I find that the combination of the opinions and medical evidence in this file warrant a restriction to a sedentary residual functional capacity with postural limits.
>
> Tr. 27-28.]
>
> ***
>
> At the fourth step, the ALJ found that considering this RFC, Plaintiff could not perform his past relevant work. Tr. 28.
>
> At the fifth and final step, the ALJ found that considering Plaintiff's vocational profile and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform through September 2, 2021. Tr. 29-30. The ALJ then noted that Plaintiff's age category changed on September 3, 2021, his 50th birthday, and that beginning on that date, there were no jobs that existed in significant numbers in the national economy that Plaintiff could perform. Tr. 29-30. Accordingly, the ALJ concluded that Plaintiff was not disabled before September 3, 2021, but became disabled on that date. Tr. 30.

ECF No. 13-1 at pp. 1-2, 5-6 (as supplemented by the bracketed portion added by the Court for completeness).

On January 12, 2024, Plaintiff commenced this action. On August 16, 2024, Plaintiff filed the subject motion for judgment on the pleadings, contending that the Commissioner's decision must be reversed for two reasons. First, Plaintiff contends that "[t]he ALJ erred by finding that Plaintiff's bilateral carpal tunnel syndrome did not meet the *de minimis* threshold to be considered a severe impairment, resulting in an insufficient [RFC] assessment." ECF No. 8-1 at p. 21. Second, Plaintiff maintains that the ALJ "failed to properly consider [Dr. Clark's opinions] regarding Plaintiff's restrictions." *Id*.

On November 6, 2024, the Commissioner filed the subject cross-motion for judgment on the pleadings (ECF No. 13). The Commissioner contends that the ALJ properly found that Plaintiff's carpal tunnel condition was not severe, and, alternatively, that any error by the ALJ in that regard was harmless, since the ALJ considered that condition at the subsequent steps of the sequential evaluation. Additionally, the Commissioner maintains that the ALJ "soundly determined that the extreme limitations opined by [Dr. Clark] were unpersuasive in light of the record evidence, which showed Plaintiff had no difficulty sitting and could perform heavy labor activities and work part-time during the relevant period." ECF No. 13-1.

On November 27, 2024, Plaintiff filed a reply (ECF No. 16).

On April 3, 2026, the Clerk of the Court reassigned this action to the undersigned. The Court has considered the parties' submissions and the relevant sections of administrative record.

DISCUSSION

<u>The ALJ's Alleged Error at Step Two</u>

Plaintiff asserts that the ALJ's determination at the second step of the sequential evaluation --that Plaintiff's carpal tunnel condition was not a severe impairment-- is erroneous and unsupported by substantial evidence, since, for example, "during the relevant period, [he] received injections, saw an orthopedic surgeon, and ultimately required carpal tunnel release surgeries on both wrists." ECF No. 8-1 at p. 21.[7]

---

[7] *See also, id*. ("Plaintiff reported six months of severe bilateral hand symptoms to Dr. Deahn on October 7, 2019. Examination revealed positive Phalen's test bilaterally, and Dr. Deahn assessed Plaintiff with bilateral carpal tunnel syndrome and administered carpal tunnel pain injections bilaterally. On March 6, 2020, Plaintiff again reported severe carpal tunnel pain[, and] [e]xamination revealed positive Tinel's and Phalen's

Plaintiff acknowledges that an ALJ's erroneous failure to find an impairment severe at step two may be harmless "where the ALJ also later considers the effects from the omitted impairment as part of the ultimate RFC determination."[8] However, Plaintiff contends that in this case, such error was not harmless, since "the ALJ did not assess any manipulative limitations in the hands related to Plaintiff's carpal tunnel syndrome in the RFC [finding]." ECF No. 8-1 at p. 23. On this point, Plaintiff argues that an error by an ALJ in failing to designate an impairment as severe at the second step of the sequential evaluation may be deemed harmless only if the ALJ later includes some limitation related to the impairment in the RFC finding. In other words, Plaintiff asserts that it is not sufficient for the ALJ to merely *consider* the impairment at the subsequent steps of the sequential evaluation; rather, he must actually *account for* the impairment in the RFC finding in order for the step-two error to be deemed harmless. *See*, Pl. Reply, ECF No. 16 at p. 4 (Arguing that the Commissioner's harmless error argument "is flawed because the ALJ did not include any limitations related to Plaintiff's carpal tunnel syndrome in the RFC [finding].").

The Commissioner disagrees, contending that the ALJ properly found that Plaintiff's carpal tunnel syndrome was not severe,[9] and, alternatively, that any error by the ALJ in that regard was harmless, since the ALJ considered that condition at the subsequent steps of the sequential evaluation. The Commissioner further maintains that the ALJ "reasonably concluded that manipulative limitations were not warranted in the residual functional

---

signs, and another round of pain injections were given.") (citations omitted); *id* at p. 23 ("During the relevant period, Plaintiff experienced severe symptoms for bilateral carpal tunnel syndrome, for which he received regular and consistent treatment. Hence, the totality of the evidence undermines the ALJ's assessment of Plaintiff's carpal tunnel syndrome as non-severe.") (citation and internal quotation marks omitted).

[8] ECF No. 8-1 at p. 24.

[9] ECF No. 13-1.

capacity (RFC) finding because objective findings during hand examinations were largely normal and because Plaintiff was able to perform extensive daily activities that required hand use throughout the relevant period," such as riding a motorcycle. ECF No. 13-1 at pp. 2; *see also, id*. at p. 10 ("These activities, which show Plaintiff can lift and carry more than ten pounds, easily support the ALJ's finding that he could perform sedentary work.").

The parties' arguments reference principles of law that are well settled in this Circuit:

> An ALJ should make a finding [that a claimant's impairment is] "'not severe' ... if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" *Mark K. v. Comm'r of Soc. Sec. Admin*., No. 5:18-CV-627 (GLS), 2019 WL 4757381, at *1 (N.D.N.Y. Sept. 30, 2019) (quoting *Rosario v. Apfel*, No. 97-CV-5759, 1999 WL 294727, at *5 (E.D.N.Y. Mar. 19, 1999)). Although an impairment may not be severe by itself, the ALJ must also consider "the possibility of several such impairments combining to produce a severe impairment ...." Social Security Ruling ("SSR") 85-28, 1985 WL 56856, at *3 (1985). However, a combination of "slight abnormalities," having no more a minimal effect on plaintiff's ability to work, will not be considered severe. *Id*. The ALJ must assess the impact of the combination of impairments, rather than assessing the contribution of each impairment to the restriction of activity separately, as if each impairment existed alone. *Id*.
>
> The step two analysis "may do no more than screen out *de minimis* claims." *Vogt on behalf of Vogt v. Comm'r of Soc. Sec*., No. 18-CV-231, 2019 WL 4415277, at *4 (W.D.N.Y. Sept. 16, 2019) (quoting *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995)). If the disability claim rises above a *de minimis* level, then the ALJ must undertake the remaining analysis of the claim at step three through step five. *Dixon*, 54 F.3d at 1030.
>
> Often, when there are multiple impairments, and the ALJ finds some, but not all of them severe, an error in the severity analysis at step two may be harmless because the ALJ continued with the sequential analysis and did not deny the claim based on the lack of a severe impairment alone. *Tryon v. Astrue*, No. 5:10-CV-537 (MAD), 2012 WL 398952, at *3 (N.D.N.Y. Feb. 7, 2012) (citing *Kemp v. Commissioner of Soc. Sec*., No. 7:10-CV-1244

> (GLS/ATB), 2011 WL 3876526, at *8 (N.D.N.Y. Aug. 11, 2011)). This is particularly true because the regulations provide that combined effects of all impairments must be considered, regardless of whether any impairment, if considered separately, would be of sufficient severity. 20 C.F.R. §§ 404.1523, 416.923; *Dixon*, 54 F.3d at 1031.

*Ann C. v. Comm'r of Soc. Sec*., No. 6:19-CV-904 (ATB), 2020 WL 4284132, at *4 (N.D.N.Y. July 24, 2020), *aff'd sub nom. Cuda v. Comm'r of Soc. Sec*., No. 20-2819, 2021 WL 4887993 (2d Cir. Oct. 20, 2021).

Here, as discussed earlier, the parties disagree, both as to whether the ALJ properly found that Plaintiff's carpal tunnel syndrome was a severe impairment, and as to whether any error by the ALJ in that regard would be harmless. However, the Court finds that it need not decide whether the ALJ's step two finding was correct, since even if the AJS's finding of non-severity was erroneous, the error was nevertheless harmless since the ALJ considered that impairment at the subsequent steps of the sequential evaluation, including when he made the RFC finding. *See*, ALJ's Decision, Tr. 20 ("Although I have determined that some of the claimant's impairments are non-severe, the limiting effects of all the claimant's impairments, even those that are not severe, were considered in determining the claimant's residual functional capacity[.]"); *see also, id*. at pp. 22, 24, 26, 27 (Discussing Plaintiff's ability to use his hands as part of the RFC discussion).

In this regard, the Court finds no merit to Plaintiff's argument that any such error can only be deemed harmless where the ALJ actually includes some limitation in the RFC finding related to the impairment. Rather, the caselaw indicates that such an error is made harmless by the ALJ's subsequent *consideration* of the impairment at the later steps of the sequential evaluation, even if such consideration does not result in some limitation being

placed in the RFC. *See, e.g., Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) ("[Appellant] claims that the ALJ's step two analysis was deficient because the ALJ excluded her anxiety disorder and panic disorder from his review. . . . Even if this argument had not been waived, any error would be harmless. At step two, the ALJ identified other "severe impairments," including Reices–Colon's "back problem, migraine headaches, depression, and post traumatic stress disorder," and therefore proceeded with the subsequent steps. And, in those subsequent steps, the ALJ specifically considered her anxiety and panic attacks. Because these conditions were considered during the subsequent steps, any error was harmless.") (emphasis added; *citing Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir.2010)).

Consequently, Plaintiff's motion is denied insofar as it is based on the ALJ's decision at step two of the sequential evaluation.

Plaintiff nevertheless contends that the ALJ's RFC finding is "insufficient" since it does not include any limitation related to his carpal tunnel syndrome. ECF No. 8-1 at p. 21. Plaintiff further maintains that this omission by the ALJ is harmful, since "most unskilled sedentary jobs require good use of both hands and fingers, *i.e.* bilateral manual dexterity," and "any significant manipulative limitation of an individual's ability to handle and work with small objects with both hands will result in a significant erosion of the unskilled sedentary occupational base." ECF No. 8-1 at p. 24 (citations omitted).

However, "it is the claimant's burden to prove a more restrictive RFC[,]" *Snyder v. Comm'r of Soc. Sec.*, No. 22-277-CV, 2023 WL 1943108, at *3 (2d Cir. Feb. 13, 2023) (citation omitted), and Plaintiff has not met that burden. Rather, Plaintiff merely references evidence relating to his carpal tunnel syndrome, and then asserts that the RFC finding

should have been more restrictive. However, the ALJ explained the evidence upon which he relied to make the RFC finding, including the opinions of Drs. Liu and Koenig that Plaintiff was not significantly limited in using his hands[10] and Plaintiff's own reported activities involving significant use of his hands.

Although Plaintiff disagrees with how the ALJ evaluated the evidence, he has not shown that a reasonable factfinder would have to conclude that his ability to use his hands is more limited than what the ALJ found. *See, Nicole R. T. v. Comm'r of Soc. Sec.*, No. 5:20-CV-1015 (DEP), 2022 WL 866551, at *10 (N.D.N.Y. Mar. 23, 2022) ("[I]t was the plaintiff's burden to prove that she is disabled, and she has not pointed to evidence, other than that which was discounted to some extent by the ALJ for valid reasons, which shows that she was more significantly limited, particularly in her abilities to reach, handle, or finger with her upper left extremity, such that a reasonable person would have to conclude contrary to the ALJ's findings."), *aff'd sub nom. Tibbles v. Comm'r of Soc. Sec.*, No. 22-1127-CV, 2023 WL 3477127 (2d Cir. May 16, 2023).

Plaintiff's motion is therefore denied insofar as it is based on alleged errors involving his carpal tunnel syndrome.

<u>The ALJ's Alleged Error Evaluating Dr. Clark's Opinions</u>

Plaintiff next contends that the ALJ erred when evaluating Clark's opinions concerning "whether Plaintiff would be off task and/or require breaks during the day." ECF

[10] *See, e.g.*, Tr. 27 ("I note that both Dr. Liu and Dr. Koenig indicated that, despite carpal tunnel syndrome treated with surgeries, the claimant has no limits for handling, fingering, and feeling, which I find to be consistent with the overall medical evidence, including clinical findings such as intact hand and finger dexterity with full bilateral grip strength.").

No. 8-1 at p. 27. In particular, the ALJ found unpersuasive Clark's opinion that Plaintiff's symptoms would frequently interfere with his attention and concentration while performing even simple work, and that Plaintiff would need a 30-minute break to lie down every hour during the workday. Tr. 27-28.

Plaintiff complains that "the ALJ's evaluation of Dr. Clark's opinion is not based on substantial evidence," since, in a prior decision, the ALJ found Clark's opinions regarding Plaintiff's purported need to be off task and take breaks to be persuasive, but after the Appeals Council rejected that finding, "[t]he ALJ made a complete 180 on these limitations without properly reviewing or evaluating the objective evidence." *Id*. Plaintiff further asserts that the ALJ failed to ask him a sufficient number of questions at the hearing following remand by the Appeals Council, and that, "[i]nstead of independently evaluating the medical evidence, the ALJ 'supported' his [finding] by copying nine paragraphs of the Appeals Council's order with no further factual analysis of the objective medical evidence." *Id*. at pp. 28, 27.

The Commissioner responds that the ALJ complied with the regulation for evaluating medical opinion evidence, 20 C.F.R. § 1520c, and properly found that that Clark's opinions were unpersuasive insofar as they were more restrictive than the RFC finding. More specifically, the Commissioner maintains that the ALJ properly found that Clark's opinions were inconsistent with, and unsupported by, much of the evidence of record:

> The ALJ explained that the attention and concentration portion of the opinion was not supported, as Dr. Clark's records did not include any findings relating to attention and concentration. Tr. 27, 962-64, 1188-91. The ALJ also found this portion of the opinion was inconsistent with Plaintiff's own statement that he could pay attention indefinitely. Tr. 27-28, 355. The ALJ acknowledged that

> Dr. Clark's examination findings provided some support for the remaining limitations [in her opinion statement], but he concluded that the extent of the opined limitations was inconsistent with Plaintiff's ability to perform rigorous activities like carrying plywood, building pallets, cutting the lawn, throwing axes, biking, golfing, and working part-time. Tr. 28, 351-52, 354, 474, 768, 854, 866, 911, 1135, 1137, 1155, 1157, 1160, 1211. The ALJ also explained that these limitations were inconsistent with other evidence, including Dr. Koenig's administrative findings, and that the record supported a sedentary RFC with postural limitations. Tr. 28, 98-101.

ECF No. 13-1 at p. 13.

The Commissioner further maintains that there is no merit to Plaintiff's assertion that the ALJ failed to properly evaluate the evidence, and, instead, merely parroted the Appeals Council's ruling:

> Plaintiff's argument that the ALJ did not independently evaluate Dr. Clark's opinion is meritless. Pl.'s Br. at 26-27. Throughout his decision, the ALJ specifically discussed the evidence underlying the portions of the Appeals Council order he incorporated into his supportability and consistency discussion. Tr. 22-28, 119-24. Thus, the ALJ independently considered that evidence, and he clearly articulated how the evidence cited by the Appeals Council impacted the supportability and consistency of Dr. Clark's opinion. Tr. 22-28.
>
> Plaintiff also takes issue with the fact that the ALJ previously found Dr. Clark's opinion persuasive but found it unpersuasive in the decision at issue here. Pl.'s Br. at 27. This argument is also unavailing. The Appeals Council vacated the prior ALJ decision, including the ALJ's prior evaluation of Dr. Clark's opinion, and nothing in the Appeals Council's decision required the ALJ to make the same findings he previously made with respect to Dr. Clark's opinion. Tr. 117-25. Moreover, the Appeals Council explicitly instructed the ALJ to re-evaluate the opinion. Tr. 125. The ALJ did exactly that. He reconsidered the opinion in the context of the record as a whole, including Plaintiff's daily activities and other evidence that was inconsistent with Dr. Clark's opinion. Tr. 22-28.

ECF No. 13-1 at pp. 13-16.

In Plaintiff's reply, he reiterates his contention that the ALJ's assessment of Clark's opinion "was not based on substantial evidence." ECF No. 16.

The Court, however, finds that the ALJ's evaluation of Clark's opinion applied the correct legal standards and is supported by substantial evidence. In this regard, the ALJ's decision contains two lengthy paragraphs concerning Clark's opinions. The first provides a summary of Clark's treatment records and exam findings, Tr. 25, while the second essentially explains how the ALJ modified his view of Clark's opinion based on the fact, as pointed out in the Appeal's Council's decision, that there are numerous instances in which Clark's opinion was inconsistent with Plaintiff's actual reported abilities and activities. Tr. 27-28. In this regard, the ALJ quoted the Appeals Council's decision extensively, but the Court finds no error in that, since the points raised by the Appeals Council appear to accurately reflect the record evidence. For example, the ALJ's decision discusses how the Appeals Council pointed out that, contrary to Clark's statement that Plaintiff's symptoms would frequently interfere with his attention and concentration throughout the day, Plaintiff himself "reported no limitation with respect to his concentration , and [stated] that he could pay attention 'indefinitely." Tr. 27.

On the other hand, as the ALJ noted, the opinions of Clark that Plaintiff now insists the ALJ should have adopted –such as that Plaintiff would be frequently distracted by pain and would need to lie down to rest every hour— do not appear to be well supported by Clark's own findings, and are inconsistent with many of the activities that Plaintiff was admittedly performing during the relevant period. *See, e.g.*, ALJ's Decision at p. 28, Tr. 34 ("[T]he claimant reported performing activities during the period at issue which are not

consistent with the limitations set forth in [Dr. Clark's] opinion, including carrying plywood, building pallets, cutting the lawn, throwing axes, biking, golfing, and working 20-25 hours per week.") (quoting Appeals Council's Decision reversing the ALJ's prior decision).

Consequently, the Court finds no merit to Plaintiff's arguments concerning the ALJ's evaluation of Dr. Clark's opinions.

## CONCLUSION

For the reasons discussed above, Plaintiff's motion for judgment on the pleadings (ECF No. 8) is denied, and Defendant's cross-motion for the same relief (ECF No. 13) is granted. The Clerk of the Court is directed to enter judgment for Defendant and close this action.

So Ordered.

Dated: Rochester, New York
September 17, 2026

ENTER:

Charles J. Siragusa

CHARLES J. SIRAGUSA
United States District Judge